UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALBERT PALOMAR, | ) | |
| FOSTER MITCHELL, | ) | |
| DANTE HUTTON, | ) | |
| TAYLOR KIRBY, and | ) | |
| MATTHEW BRADBURN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04693-RLY-MJD |
| | ) | |
| SMC CORPORATION OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON PLAINTIFFS' MOTIONS TO CERTIFY CLASS ACTION AND FOR APPROVAL OF CLASS ACTION NOTICE

Albert Palomar, Foster Mitchell, Dante Hutton, Taylor Kirby, and Matthew

Bradburn, Plaintiffs, are former employees of SMC Corporation of America, Defendant.

They seek to certify a nationwide class action and a California subclass based on a "user

fee" that was deducted from their paychecks by SMC for their personal use of company

vehicles.[1]  Plaintiffs allege this practice violated the Indiana Wage Payment Statute,

Indiana Code section 22-2-5, the Indiana Wage Assignment Statute, Indiana Code section

22-2-6, the Indiana Crime Victim's Relief Act, Indiana Code section 34-34-3-1, Indiana

common law, and 26 U.S.C. § 2434 of the IRS Code, which provides a private cause of

action.  In addition, Plaintiffs Palomar and Mitchell allege violations of the California

---

[1] Plaintiffs also seek conditional certification of a collective action under the Fair Labor Standards Act.  That motion is currently pending before the court.  (Filing No. 21).

1

Unfair Competition Law, California Business & Professions Code sections 17200-17209. Defendants oppose certification on the grounds that the proposed nationwide class fails the commonality and superiority requirements of 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and that the court lacks subject matter jurisdiction over the proposed California subclass. Plaintiffs also seek approval of their proposed Class Action Notice and an order compelling SMC to disclose information identifying potential plaintiffs. For the reasons that follow, Plaintiffs' motion for certification under Rule 23 is **GRANTED in part** and **DENIED in part**. Plaintiffs' motion for approval of Class Action Notice is **GRANTED in part.**

## I.    Background

Plaintiffs worked for SMC as full-time sales representatives in different states. Palomar and Mitchell worked in California (Filing No. 88-1, Deposition of Albert Palomar ("Palomar Dep.") at 56-57; Filing No. 88-2, Deposition of Foster Mitchell ("Mitchell Dep.") at 52). Hutton worked in Kansas. (Filing No. 88-3, Deposition of Dante Hutton ("Hutton Dep.") at 45). Bradburn worked in Ohio. (Filing No. 88-4, Deposition of Matthew Bradburn ("Bradburn Dep.") at 50).

As sales representatives, Plaintiffs were required to drive a company vehicle, but they were permitted to drive the vehicle for personal use. (Filing Nos. 85-16 and 91-1, Deposition of Ginny Burns ("Burns Dep.") at 29; Filing No. 85-7, SMC Fleet Car Policy Rules of the Road ("Rules of the Road") at 3). The Rules of the Road handbook advised SMC employees that they "will be charged a user fee for the personal use of the company vehicle," and the "fee will be deducted from [their] pay each pay period to offset the tax

2

liability of [their] personal mileage use."  (Rules of the Road at 3).  SMC charged each

sales employee the same user fee of $83.08, which amounts to $2,160.00 annually.

(Filing No. 88-5, Deposition of Ellen Rippy ("Rippy Dep.") at 49, 62).

The Rules of the Road described the tax treatment of employees' personal use of

the company vehicles:

**TAX TREATMENT OF PERSONAL USE**

SMC will determine the percentage of personal use of your company vehicle
based on the "Annual Lease Value" (ALV) provided by the IRS. Under the
ALV method, each November, the lease value of your vehicle will be
determined from an IRS prescribed table, based upon the original cost of the
car. The amount per the table will be multiplied by your personal use
percentage to determine the personal use value. In addition, personal use fuel
will be calculated using an IRS accepted 5.5 cents per mile multiplied by the
personal miles driven for the same period. This information is the basis for
the amount SMC will add to the employee's W-2 Form as taxable income.
In the event mileage reports are, the IRS requires SMC to calculate all
mileage for the missing period as 100% personal.

(Rules of the Road at 15).  The Rules of the Road further explained that SMC would not

reimburse mileage if the employee used their personal vehicle.  (*Id.* at 22).  All

employees, including Plaintiffs, signed the "Acknowledgement of SMC Corporation of

America Rules of the Road" as a condition of employment.  (Burns Dep. at 30).

According to Plaintiffs, SMC did not report any personal use miles as taxable

income to the IRS on W-2 Forms, nor did it pay the user fee deductions to the IRS to

offset any tax liability:

Q.  What I'm asking is the actual dollars that were deducted as user fees.
Were any of those dollars ever used or paid over by SMC on an employee's
behalf to cover any tax liability?

A.  No.

Q. So the user fee dollars were never tied into payment of any tax obligation?

A. No, it just reduces what is reported as the income.

(Burns Dep. at 72-73). Instead, SMC simply pocketed the money to the tune of $5,377,173.00 between 2014 and 2019. (Filing No. 85-25, SMC's Spreadsheet Summary at 4). This was more than seven times greater than the $734,657.88 in tax liability SMC employees would have owed if SMC had simply reported the cumulative personal use income during that same period, as SMC allegedly stated it would in the Rules of the Road handbook. (Rules of the Road at 3, 27). Additionally, Plaintiffs argue the user fee deductions were not one of the permissible wage deductions under the Indiana Wage Assignment Statute, Indiana Code section 22-2-6-2(b), and SMC's Acknowledgement Forms failed to include revocation language as required by the Wage Assignment Statute, Indiana Code section 22-2-6-2(a)(1)(C).

SMC disputes Plaintiffs' characterization of how it handled the user fees. The way SMC explains it, SMC does not keep the user fees; it used them to "offset the expense of the vehicle and the tax liability of the driver." (Rippy Dep. at 75). In this way, SMC argues it did precisely what it told its employees it would do with the user fees: SMC would offset the employees' tax liability by reducing what the employees reported as income. (Burns Dep. at 71-72).

## II. Legal Standard

To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of

representation—and one of the three options under Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). When certification is sought under Rule 23(b)(3), as it is here, the proponents of the class must also show: (1) that common questions of law or fact predominate over questions affecting individual class members; and (2) that class action is the superior method of resolving the controversy. *Id.* Plaintiffs bear the burden of showing by a preponderance of the evidence that the proposed class satisfies Rule 23's requirements. *Id.* If there are disputes over factual issues that are material under Rule 23, the court must "receive evidence . . . and resolve the disputes before deciding whether to certify the class." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020) (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). Rule 23 gives district courts "broad discretion" to determine whether certification is appropriate. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011).

## III.    Discussion

The court begins by considering whether the proposed nationwide class satisfies the requirements of Rule 23. Defendants take aim at the commonality and superiority requirements, but the court must still "rigorously analyze" all of the requirements of Rule 23. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). The court then turns to the proposed California subclass, which Defendants argue should be dismissed because the court lacks jurisdiction.

### A.    Nationwide Class

Plaintiffs seek certification of the following nationwide class based on violations of Indiana law and the IRS Code: "Present and former SMC Corporation of America employees who were subjected to one or more 'User Fee' wage deductions at any time from November 26, 2014 to the present."  Plaintiffs bring their claims under the Indiana wage statutes, Indiana common law, and 26 U.S.C. § 7434 of the IRS Code.  Plaintiffs Palomar, Mitchell, Hutton, and Bradburn seek to represent this class.

### 1.    Rule 23(a) Requirements

#### a.    Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable."  *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(a)(1)).  While there is no magic number, 40 members is often regarded as sufficient.  *Id.*

Dating back to 2016, the number of employees who were subjected to one or more user fee deductions ranged from 483 in 2016 to 552 in 2018.  (Filing No. 85-18, Employee Spreadsheet).  The number of potential nationwide class members here satisfies the numerosity requirement.

#### b.    Commonality

The commonality requirement considers whether "there are questions of law or fact common to the class."  *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 434 (7th Cir. 2015) (quoting Fed. R. Civ. P. 23(a)(2)).  The court need only find one common question of law or fact, but "the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of the law is not

enough." *Id.* (quoting *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011)).  Plaintiffs' claims "must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Common questions often exists where defendants engaged in the same conduct or practice toward members of the proposed class. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.") (collecting cases).

### i.    Claims Under Indiana's Wage Statutes

The parties agree that the basis of the dispute is whether the wage deductions were lawful, but SMC argues the proposed class fails the commonality requirement because the lawfulness of the wage deductions is governed by the state wage law where each employee worked.  More specifically, SMC argues Indiana's Wage Payment Statute and Wage Assignment Statute, which form the basis of Plaintiffs' claim, do not apply to employees who worked outside of Indiana.  SMC suggests that concluding otherwise would be inconsistent with Indiana's other wage statutes that apply only within Indiana's borders. *See, e.g.,* Ind. Code § 22-2-2-2 (Indiana minimum wage law); Ind. Code § 22-2-9-1 (Indiana Wage Claims Statute).  Further, SMC argues Indiana has a general presumption against giving statutes extraterritorial effect, *see Wright-Moore Corp. v. Ricoh Corp.*, 794 F. Supp. 844, 860 (N.D. Ind. 1991), *aff'd*, 980 F.2d 432 (7th Cir. 1992),

and an extraterritorial application of Indiana's wage statutes would violate the Commerce Clause.[2]

These arguments are certainly not without support. *See, e.g., Handmaker v. CertusBank, N.A.*, No. 3:15-CV-129-TBR, 2015 WL 13635662, at *6 (W.D. Ky. July 7, 2015) (no extraterritorial application of South Carolina Payment of Wages Act when statute was silent on issue); *Wooley v. Bridgeview Bank Mortg. Co., LLC*, No. 14 C 5757, 2015 WL 327357, at *2 (N.D. Ill. Jan. 23, 2015) (no extraterritorial application of Illinois Minimum Wage Law when statute was silent on issue); *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 WL 1159412, at *3-4 (S.D. Ohio May 17, 2005) (no extraterritorial application of Ohio Minimum Fair Wage Standards Act when statute was silent and concluding otherwise would violate the Commerce Clause); *Wright-Moore Corp*, 794 F. Supp. at 860 (no extraterritorial application of the Indiana Deceptive Franchise Practices Act when statute was silent and noting potential Commerce Clause issues).

However, Defendants' arguments jump the gun. "A proposed class of plaintiffs must prove the existence of a common question . . . , but it need not prove that the answer to that question will be resolved in its favor." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015); *see also Messner*, 669 F.3d at 811 (when conducting the Rule

---

[2] SMC raised these arguments in its Motion for Judgment on the Pleadings, (Filing No. 78), but the court denied that motion.  Plaintiffs' Amended Complaint alleged that SMC employed each plaintiff at SMC's location in Plaintiffs' home states *and* SMC's location in Indiana.  (Filing No. 71, Complaint ¶¶ 14-18).  SMC admitted those allegations in its Answer.  (Filing No. 74, Answer ¶¶ 14-18).  Taking those allegations as true, Plaintiffs had plausibly alleged a violation of Indiana's wage statutes.

23 analysis, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits").  Whether the Indiana Wage Payment Statute applies to all SMC employees regardless of where they work is a common question to all members of the proposed class, and that answer will apply across the board.

In addition, there are at least two other questions regarding the wage statutes that are "capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.  First, whether the user fee deductions were one of the permissible wage deductions under the Indiana Wage Assignment Statute.  Second, whether SMC's Acknowledgement Forms contained certain language as required by the Wage Assignment Statute.  Plaintiffs have demonstrated common questions of fact by asserting that each class member was subjected to the same $83.08 user fee deduction per pay period; each was required to accept a company vehicle; each received SMC's Rules of the Road handbook that outlined the user fee arrangement and tax treatment; and each was required to sign the Rules of the Road acknowledgment form.  The commonality requirement is met for Plaintiffs' claims under Indiana's Wage Payment Statute and Wage Assignment Statute.

### ii.    Claims Under Indiana Common Law

The commonality requirement for Plaintiffs' assorted misrepresentation-based claims under Indiana common law is also satisfied.  Those claims are for unjust enrichment, conversion, criminal conversion, theft, fraud, constructive fraud, and deception.  Here, again, common questions exist where "the same conduct or practice by the same defendant [gave] rise to the same kind of claims from all class members." *Suchanek*, 764 F.3d at 756.  SMC imposed the same user fee system on all plaintiffs, used

the same Rules of the Road handbook containing the same allegedly deceptive explanation of how SMC would treat tax liability, and used the same acknowledgement form. Accordingly, there are central, common questions, including whether SMC made written misrepresentations regarding the user fee deductions and employees' tax liability, whether the handbook was deceptive or fraudulent, and whether SMC unlawfully withheld and retained the user fees.

SMC argues that Plaintiffs' common law claims fail the commonality requirement because the court would need to apply the substantive law of multiple jurisdictions. The court agrees that there are significant issues with applying the laws of multiple jurisdictions in a nationwide class, but that analysis is more properly considered in terms of predominance and superiority. The commonality requirement is phrased in the disjunctive: "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). Because the court concludes there are common questions of fact, the commonality requirement is met.

### iii.    Claim under 26 U.S.C. § 7434 of the IRS Code

Finally, the court considers the commonality requirement for Plaintiffs' claim under 26 U.S.C. § 7434. That statute provides, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434.

According to Plaintiffs, SMC filed fraudulent W-2s every time it filed a W-2 for an employee who was subjected to a user fee deduction. These Forms underreported

10

each employee's annual gross earnings by failing to report any imputed income for the employee's personal use of the company vehicle, and SMC failed to pay any of the user fee money it deducted to the IRS to cover class members' tax obligations. Plaintiffs further allege that the IRS Code and IRS Regulations do not require SMC to deduct a user fee for personal use of a company vehicle and that SMC's description of its obligations under IRS requirements was misleading. SMC could have simply calculated and reported the employee's taxable income related to the use of the company vehicle and allowed the employees to pay the tax themselves, which would have amounted to a lower dollar amount than that deducted by SMC under its user fee scheme. As with the other claims, the same course of conduct gave rise to Plaintiffs' claim under the IRS Code, so commonality is satisfied.

### c.   Typicality

In addition to commonality, Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) (citation omitted). Typicality is meant "to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Lacy v. Cook Cty.*, 897 F.3d 847, 866 (7th Cir. 2018) (internal quotation and citation omitted).

The court has already outlined the practice and course of conduct that gave rise to Plaintiffs' different claims.  The record indicates that all of the named plaintiffs were subjected to the same conduct by SMC and share the same essential characteristics of the class at large.  "Typicality ensures that class representatives have an 'incentive to litigate vigorously' the claims of the absent class members."  *Howard*, 989 F.3d at 606.  At this stage, Plaintiffs have carried their burden of demonstrating the named plaintiffs are typical of the proposed class for all of their claims.

### d.  Adequacy of Representation

The final Rule 23(a) requirement is adequacy of representation.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'"  *Howard*, 989 F.3d at 609 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *see also Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) ("This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel.").

There is no indication that any of the named plaintiffs have a conflict with the class they seek to represent, and they appear to have every incentive to litigate the matter fully.  Further, Plaintiffs' counsel appears fully competent to handle the litigation.  This requirement is met.

### 2.  Rule 23(b) Requirements

### a.   Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  "This requirement builds on commonality; whereas Rule 23(a)(2) requires the existence of a common question, Rule 23(b)(3) requires the common question(s) to 'predominate' over the individual ones.  As a result, predominance 'is far more demanding' than commonality."  *Howard*, 989 F.3d at 607.  Courts do not apply a "mathematical or mechanical test" when evaluating predominance, but "[e]fficiency is the animating principle."  *Id.* (citations omitted).  "To gauge whether a class action would be more efficient than individual suits, [t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Id.*  (internal quotations and citations omitted).

### i.   Claims Under Indiana's Wage Statutes

At this stage, common questions appear to predominate over individual questions regarding Plaintiffs' claims under Indiana's wage statutes.  Plaintiffs have identified at least three common questions: (1) whether the Indiana Wage Payment Statute applies to all SMC employees regardless where they work; (2) whether the user fee deductions were one of the permissible wage deductions under the Indiana Wage Assignment Statute; and (3) whether SMC's Acknowledgement Forms contained certain language as required by the Wage Assignment Statute.  All proposed class members were subjected to the same

user fee deduction, and these common questions appear to predominate over any potential factual variation.

### ii.    Claims Under Indiana Common Law

Turning next to Plaintiffs' claims under Indiana common law, those claims present significant conflict of law questions that make a nationwide class inappropriate for several common law claims. Again, Plaintiffs' claims are for unjust enrichment, conversion, criminal conversion, theft, fraud, constructive fraud, and deception.

Because Plaintiffs' common law claims rest on state law, "the choice-of-law rules come from the state in which the federal court sits." *In re Bridgestone*, 288 F.3d 1012, 1015 (7th Cir. 2002). In tort, "Indiana is a *lex loci delicti* state: in all but exceptional cases it applies the law of the place where harm occurred." *Id.* at 1016 (citing *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987)); *see also Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983) ("In claims for fraud and misrepresentation, the tort is considered to have been committed in the state where the loss occurred, typically because that is where the last event necessary to create liability has taken place.").

Taking Plaintiffs' fraud, constructive fraud, and deception claims first, the loss occurred in Plaintiffs' home states, not Indiana. In cases involving fraud and misrepresentation, the loss occurs where the plaintiff felt the harm, not where the misrepresentations are made. *See W. Smelting & Metals, Inc. v. Slater Steel, Inc.*, 621 F. Supp. 578, 583 (N.D. Ind. 1985) (citing Restatement of Conflict of Laws, § 377) (concluding the economic impact of misrepresentations was suffered where the plaintiff

would have cashed the checks from defendants and is deprived of the money owed to it); *Eby*, 455 N.E.2d at 626 (concluding the place of loss is the place where the plaintiff suffered his damages, not where the misrepresentations were made); *see also Zandman v. Joseph*, 102 F.R.D. 924, 929-30 (N.D. Ind. 1984) ("Moreover, there is no Indiana choice-of-law rule that would allow the fraud law of a single state to be used to govern plaintiffs' alleged class action. Indiana ordinarily follows the *lex loci delicti* choice-of-law rule for torts, and thus for a fraud claim uses the law of the place where the loss was suffered.") (citing *Eby*, 455 N.E.2d at 626). Plaintiffs felt the harm where they were deprived of the money owed to them, which was in their home state. This is not one of the "exceptional" cases that would warrant breaking from Indiana's presumption that the court must apply the law of the place where the harm occurred. *In re Bridgestone*, 288 F.3d at 1016.

With this in mind, a nationwide class subject to the fraud laws of multiple states would be inappropriate, as the variations in state law would overwhelm the common factual issues.[3] The fraud laws of the various states can differ, even if only slightly. *See Zandman,* 102 F.R.D. at 930; *see also Siegel*, 256 F.R.D. at 584 (denying certification of a nationwide class in part because of difference in unjust enrichment laws across jurisdictions, and stating, "nuance in the law is important and must be respected"). For

---

[3] It is unclear how many potential states may ultimately be represented in the nationwide class, but Plaintiffs allege SMC employs as many as 600 sales staff throughout the country who are required to use a company vehicle and who were potentially subjected to user fee deductions. (Complaint ¶ 76). SMC also does work or maintains a branch office in 37 states. (Filing No. 91-2, Deposition of Tamara Clookey ("Clookey Dep.") at 19-20). Indeed, the fact Plaintiffs seek a nationwide class and not subclasses of the four named plaintiffs' home states suggests the court would need to apply the laws of potentially dozens of jurisdictions.

example, each of the named plaintiffs' home states impose different statutes of limitations. *See* Ind. Code § 34-11-2-7 (six-year statute of limitations in Indiana); *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001) (three-year statute of limitations in California); *Foster v. Foster*, 2018-Ohio-1961, 113 N.E.3d 150, ¶ 28 (four-year statute of limitations in Ohio); *Ives v. McGannon*, 149 P.3d 880, 887 (Kan. Ct. App. 2007) (two-year statute of limitations in Kansas). The standard of proof for fraud claims also varies. In Kansas and Ohio, fraud must be proved by clear and convincing evidence. *See Cmty. First Nat'l Bank v. Nichols*, 443 P.3d 322, 333 (Kan. Ct. App. 2019); *Rapport v. Kochovski*, 2009-Ohio-6880, 923 N.E.2d 1212, ¶ 15. In California and Indiana, fraud "need not be based on clear and convincing evidence, but only on a preponderance of the evidence." *The Grubb Co. v. Dep't of Real Est.*, 194 Cal. App. 4th 1494, 1503 (2011); *Ohio Farmers Ins. Co. v. Indiana Drywall & Acoustics, Inc.*, 970 N.E.2d 674, 683 (Ind. Ct. App. 2013). Whether these elements are satisfied will require individualized inquiries that would predominate over common questions.

It is perhaps unsurprising that federal courts frequently decline class certification when the laws of different states would apply to individual class members' claims. *See, e.g., Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001) ("Differences of [state law] cut strongly against nationwide classes."); *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 1754772, at *9 (N.D. Ill. May 3, 2017) (predominance and superiority requirements not met where the court must apply the law of multiple states); *Mednick v. Precor, Inc.*, No. 14 C 3624, 2016 WL 3213400, at *8 (N.D. Ill. June 10, 2016) (denying class certification where plaintiff sought to "certify a multi-state class

to pursue violations of the consumer fraud laws of 10 states"); *Siegel*, 256 F.R.D. at 583 ("It is well-established under Seventh Circuit case law, however, that if the states' laws differ, class certification is improper."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1018 (because the claims "must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"). Certifying a nationwide class for fraud under these circumstances would be improper. Accordingly, the court, in its discretion, denies certification for Plaintiffs' fraud and deception claims.

Turning to Plaintiffs' claims for conversion, criminal conversion, and theft, Indiana's *lex loci delicti* analysis comes out slightly differently. In conversion and similar cases, the harm is considered to occur where the defendant exerted unauthorized control over the property, not where any economic damages are felt. *Lambert v. Yellowbird, Inc.*, 496 N.E.2d 406, 409 (Ind. Ct. App. 1986). Here, SMC initiated and processed the user fee deduction in Indiana. (Filing No. 91-2, Deposition of Tamara Clookey ("Clookey Dep.") at 19-20). Because the allegedly unauthorized control over the user fees occurred in Indiana, Indiana law applies to Plaintiffs' claims for conversion, criminal conversion, and theft. These claims, then, do not suffer from the same predominance issues as Plaintiffs' fraud claims.

Plaintiffs' unjust enrichment claim is evaluated under Indiana's conflict of law rules for contracts, because it is "quasi-contractual" in nature. *See Cmty. Care Centers, Inc. v. Sullivan*, 701 N.E.2d 1234 (Ind. Ct. App. 1998). That analysis looks for the state with the "most significant relationship to the transaction and the parties." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind.

2010).  In determining that relationship, courts consider: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties."  *Id.*

Those factors point to Indiana law governing the unjust enrichment claim.  The acknowledgement forms were drafted in Indiana, (Burns Dep. at 16-17), the parties signed those forms in Indiana, (*id*. at 14-15), and SMC is headquartered in Indiana.  Plaintiffs' unjust enrichment claim does not suffer from any predominance issues at this point.

### iii.      Claim under the IRS Code

Plaintiffs' final claim under the IRS code also does not appear to present any predominance issues.  SMC subjected all proposed class members to the same course of conduct—requiring sales staff to drive a company vehicle, subjecting those employees to the same user fee deduction, and allegedly failing to report employee personal use miles as taxable income to the IRS on W-2s.

Defendant suggests that the court would need to conduct an individualized inquiry into every proposed class member's W-2 to determine whether anything on that Form was fraudulent.  But SMC appears to have subjected all proposed class members to a standardized practice of deducting the same amount per pay period.  Whether that practice is ultimately lawful predominates, as the resolution of that question will substantially drive the litigation on this claim.  If the court later determines that the practice was unlawful, then the remaining inquiry would be whether proposed class

members are entitled to damages.  To the extent damages must be assessed individually, the court may later bifurcate the case into a liability phase and a damages phase.  *See Mulvania v. Sherriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).  At this point the predominance requirement is satisfied for Plaintiffs' IRS claim.

### b.    Superiority

The final Rule 23 requirement demands that "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  A class-wide resolution of Plaintiffs' claim under Indiana's wage statutes would be superior to each member litigating the case individually.  As explained, whether the statute applies to SMC's workers outside Indiana would affect all proposed class members and would efficiently move the litigation forward.  Class action would also be the superior method for resolving Plaintiffs' claims for unjust enrichment, conversion, criminal conversion, and theft.  The same course of conduct gave rise to those claims, and determining whether that conduct was lawful would efficiently resolve Plaintiffs' claims. The same is true for Plaintiffs' claim under the IRS Code.

For the reasons discussed above, Plaintiffs' common law claims of fraud and deception cannot be maintained as a class action.  *See In re Bridgestone/Firestone*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements.").  Applying the law of multiple jurisdictions would not be manageable, and the court does not find that a class action would be superior to other methods of adjudicating Plaintiffs' fraud claims.

### B.   California Subclass

Plaintiffs also seek certification of the following California subclass: "Present and former SMC Corporation of America employees who were assigned to work primarily in the State of California and who were subjected to one or more 'User Fee' wage deductions at any time from November 26, 2015 to the present." The California plaintiffs bring their claim under the California Unfair Competition Law, California Business & Professions Code §§ 17200-17209. Palomar and Mitchell seek to represent this subclass of between 40 and 100 potential members. (Burns Dep. at 73-75).

The factual allegations concerning the California subclass are virtually identical to those underlying the nationwide class. The primary difference between the classes is the basis of jurisdiction and size. Defendants argue that this court should decline to exercise its supplemental jurisdiction over the subclass because the case would be better litigated in a California court. *See* 28 U.S.C. § 1367 (District courts have supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction," and where the claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

At this point, it does not appear inappropriate to exercise supplemental jurisdiction over the California subclass. The claim is based on the same allegedly unlawful conduct surrounding the user fee deductions that are the focus of the nationwide class' claims, and application of California's law to one subclass is not necessarily unmanageable. *Butler v.*

20

*Sears, Roebuck & Co.*, 727 F.3d 796, 799 (7th Cir. 2013) (explaining that subclasses can be used when considering different state laws).

## IV. Motion for Approval of Class Action Notice

Plaintiffs also seek approval of the proposed Class Action Notice. (Filing No. 86-1). Defendants argue the proposed description of the claims is improper and Plaintiffs' request for personal telephone numbers and emails of proposed class member is unjustified.

The court sees no issue with Plaintiffs' description of the claims. Plaintiffs have accurately described their allegations, and SMC's objections address the merits of Plaintiffs' claims. As for Plaintiffs' request for personal telephone numbers and emails, Rule 23 contemplates notice by "United States mail, electronic means, or other appropriate means," Fed. R. Civ. P. 23(c)(2)(B), and courts have relied on email to provide notice of class actions and class action settlements, *see e.g., Burnett v. Conseco Life Ins. Co.*, No. 1:18-CV-200-JPH-DML, 2020 WL 4207787, at *11 (S.D. Ind. July 22, 2020); *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) (St. Eve, J.). SMC should produce the names, home addresses, and emails (if available), but the court does not find it necessary for SMC to produce the telephone numbers for potential plaintiffs.

In light of the court's ruling on certification of Plaintiffs' proposed classes, Plaintiffs' proposed Notice must reflect the correct class definitions and claims. Accordingly, the proposed Notice is approved subject to the limitations set forth in this Entry.

## V.    Conclusion

In sum, the court is mindful of the potential complications surrounding this class

action.  It is certainly true that issues may arise, but the court is free to modify or even

decertify the class if it appears that class action is no longer appropriate.  *See Eggleston v.*

*Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 896 (7th Cir.

1981).  At this stage, certification of Plaintiffs' nationwide class is appropriate for

Plaintiffs' claims under the Indiana wage statutes, Indiana common law claims for

conversion, criminal conversion, theft, and unjust enrichment, and Plaintiffs' claim under

26 U.S.C. § 7434 of the IRS Code.  Nationwide certification is not proper for Plaintiffs'

common law claims for fraud, constructive fraud, or deception.  Certification of the

California subclass is also proper.  Accordingly, Plaintiffs' Motion to Certify under

Federal Rule of Civil Procedure 23 (Filing No. 84) is **GRANTED in part** and **DENIED**

**in part**.  Plaintiffs' Motion for Approval of Class Action Notice (Filing No. 86) is also

**GRANTED in part.**  Plaintiffs shall submit a revised proposed Notice in compliance

with this Entry within fourteen days of this Entry.  Defendant is hereby **ORDERED** to

submit to Plaintiffs' counsel a list of the names, home addresses, and email addresses (if

available) of all potential plaintiffs within fourteen days of this Entry.

**SO ORDERED** this 27th day of September 2021.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.