IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALBERT PALOMAR, FOSTER MITCHELL, DANTE HUTTON, TAYLOR KIRBY, R. DALE GRIGGS, STEFANI BENDICION and MATTHEW BRADBURN, individually and on behalf of others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>SMC CORPORATION OF AMERICA,<br><br>**Defendant.** | Case No. 19-CV-4693-RLY-MJD<br><br>Judge Richard Young |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT**

## I. INTRODUCTION

This joint motion seeks final approval of the class and collective action settlement of $1,700,000.00 (the "Settlement") between Plaintiffs Albert Palomar ("Palomar"), Foster Mitchell ("Mitchell"), Dante Hutton ("Hutton"), Taylor Kirby ("Kirby"), R. Dale Griggs (Griggs), Stefani Bendicion ("Bendicion"), and Matthew Bradburn ("Bradburn"), individually and on behalf of all class members (hereinafter collectively referred to as "Plaintiffs" or "Class Members") and Defendant SMC Corporation of America ("SMC" or "Defendant").

The Settlement resolves wage and hour claims brought against Defendant on behalf of a Settlement Class consisting of the three subclasses proposed in Plaintiffs' Third Amended Complaint. SMC denied and continues to deny any liability to Plaintiffs or the proposed Settlement Class and maintains that it complies with all applicable laws. However, SMC agreed to settle the Action in accordance with the terms of the Settlement Agreement to avoid the costs of litigation.

This resolution avoids the substantial time and costs of litigation, provides finality and certainty as to disputed claims, and is the result of substantial arm's-length negotiations.

Of the 1,134 putative Class Members, only four excluded themselves from the Settlement, which equates to .35% of the Settlement class, and no member of the Settlement class has objected to the Settlement. [See Ex. 3, Settlement Administrator's Declaration, ¶¶ 6,10, and 11] The remaining 99.65% of Class Members hope to receive payments under the Settlement (and will upon final approval by the Court). As described more fully below, the Settlement is fair, reasonable, and adequate. For all these reasons, the Parties respectfully request the Court grant their Joint Motion for Final Approval of Class Action and FLSA Collective Action Settlement so that funds may be distributed to Class Members awaiting payments.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2019, Plaintiff Palomar filed his initial Complaint in this Action. ECF 1. Plaintiff filed the Complaint as a putative class action on behalf of himself and others similarly situated, alleging that Defendant violated the Indiana Wage Payment Statute, I.C. 22-2-5-2, by deducting so-called "User Fees" from their wages. *Id.* On December 30, 2019, Plaintiffs filed an Amended Complaint, adding three new Plaintiffs, Taylor Kirby, Dante Hutton, and Foster Mitchell. *Id.* Plaintiffs also added an FLSA claim, alleging that Defendant violated the federal minimum wage law by demanding that Plaintiffs repay them for the cost of a "training program" because Plaintiffs left the company less than eighteen months after they began working there. *Id.*

On June 15, 2020, Plaintiffs filed a Second Amended Complaint, adding one additional Plaintiff, Matthew Bradburn, and adding claims under the Indiana common law, the Indiana Crime Victims Relief Act, I.C., 35-43-5-3, and 26 U.S.C. § 7434 for filing fraudulent information returns.

ECF No. 71. Plaintiffs Palomar and Mitchell also asserted claims on behalf of a putative California subclass under the California Labor Code and California Unfair Competition Law. *Id.*

On September 27, 2021, the Court granted in part and denied in part Plaintiffs' motions for class certification and for FLSA conditional certification of collective action. ECF 118-119. The Court certified as a class action Plaintiffs' claims under the Indiana wage statutes, Indiana common law claims for conversion, criminal conversion, theft, and unjust enrichment, and under 26 U.S.C. § 7434 of the IRS Code. The Court also certified as a class action Plaintiffs' claims under California law. The Court denied class certification of Plaintiffs' common law claims for fraud, constructive fraud, and deception. The Class was defined as, "Present and former SMC Corporation of America employees who were subjected to one or more 'User Fee' wage deductions at any time from November 26, 2014 to the present."

On March 31, 2023, the Court ruled on the parties' cross motions for summary judgment. The Court denied Defendant's motion for summary judgment on Plaintiff's FLSA claims and Plaintiff's claims under the Indiana Wage Payment Statute as asserted by class members who worked for SMC Corporation in Indiana. The Court granted the motion in all other respects. In particular, the Court held that the coverage of the Indiana Wage Payment Statute does not extend to workers outside of Indiana. It also held that the User Fee deductions did not violate California law because they were for the benefit of the employees.

On April 26, 2023, Plaintiff Stefani Bendicion filed a putative class action lawsuit against SMC Corporation in the Circuit Court of Cook County, Illinois. Her complaint alleged that the User Fee deductions violated the Illinois Wage Payment & Collection Act, 820 ILCS 115/9.

On May 2, 2023, the Court permitted Plaintiffs to add R. Dale Griggs as a Class Representative for a subclass of Indiana employees.

3

On July 27, 2023, the parties participated in an all-day mediation with Professor Lynn Cohn of Northwestern University School of Law. At the end of the mediation, the parties reached a tentative resolution of this case and the Illinois litigation. The Parties then negotiated and finalized their Joint Stipulation and Agreement to Settle Class Action Claims. ECF 201-1.

On December 5, 2023, Stefani Bendicion dismissed her lawsuit in the Circuit Court of Cook County, Illinois without prejudice, pursuant to 735 ILCS 5/2-1009. On December 5, 2023, Plaintiffs filed a Third Amended Complaint, with the written consent of Defendant pursuant to Rule 15(a)(2). ECF 202. The Third Amended Complaint adds Bendicion as a Plaintiff in this case and pleads her claims under the Illinois Wage Payment & Collection Act. 820 ILCS 115/9.

Also on December 5, 2023, Plaintiffs filed their Uncontested Motion for Preliminary Approval of Class Action Settlement. ECF 203. On February 5, 2024, the Court entered its Order Preliminarily Approving Class Action Settlement. [ECF 207].

### III. SUMMARY OF THE SETTLEMENT

#### A. **Settlement Classes**

The Settlement contemplates that the Court will certify the following classes for the purpose of effectuating the Parties' agreement.

1. <u>Nationwide Class</u>. The term "Nationwide Class" means all present and former SMC Corporation of America employees who were subjected to one or more 'User Fee' wage deductions at any time from November 26, 2014 to the present, but excluding those who worked in Indiana or Illinois and those who previously opted out of this action.

2. <u>Indiana Class</u>. The term "Indiana Class" means all present and former SMC Corporation of America employees who were subjected to one or more 'User Fee' wage

deductions at any time from November 26, 2014 to the present, and who worked in Indiana but excluding those who previously opted out of this action.

3. <u>Illinois Class</u>. The term "Illinois Class" means all present and former SMC Corporation of America employees who were subjected to one or more 'User Fee' wage deductions at any time from April 26, 2013 to the present, and who worked in Illinois but excluding any individuals who previously opted out of this action.

**B.    Settlement Payments**

The Settlement obligates SMC to pay a Total Settlement Amount of $1,700,000, from which all payments related to the Settlement shall be made, including payment of all Settlement Shares to Class Members who do not opt out; payment of the Class Representative Payments; payment of Class Counsel's attorneys' fees and expenses; and the Settlement Administrator's fees and expenses. (*See* Exh.1, Settlement Agmt., §II.2, 3, 8 - 11.) Of the total settlement amount, $1,065,280.88 is allocated to compensate Plaintiffs and Class Members for their wage claims and $67,820.12 is allocated to compensate the FLSA Opt-In Plaintiffs.

The settlement awards Class Members the following average amounts:

| Indiana Class Members (104 individuals) | $2,403.85 |
|---|---|
| Illinois Class Members (73 individuals) | $4,794.52 |
| FLSA Opt-In Members (16 individuals) | $3,906.25 |
| Nationwide Class Members (not Illinois or Indiana) (925 individuals) | $512.43 |

Within each of the Indiana Class, Illinois Class, and Nationwide Class Members, Class Members will receive a proportional share of the Net Settlement Amount (*i.e.*, the Total Settlement Amount after deductions are made for the Class Representative Payments, Class Counsel Fees and

5

Expenses Payment, and Settlement Administrator's fees and expenses) based on the amount of "User Fee" deductions made from the wages of that Class Member.

FLSA Class Members are receiving $3,335.00 each, with the exception of Kirby who is receiving the return of the $17,795.00 he actually paid to SMC under the training agreement at issue in this lawsuit. Kirby is the only FLSA Class Member who made a payment to SMC under the training agreement.

### C. Payments to Class Representatives and Class Counsel

Plaintiffs and Class Counsel apply to the Court for an award of $500,000 in fees and costs. They also apply for Class Representative Awards of $8,000 to each Plaintiff. (Exh. 1, Settlement Agmt., § II.10.c.) Such payments are commonly referred to as "incentive" or "enhancement" awards.

### D. Fees and Expenses of the Settlement Administrator

The Settlement Administrator, Analytics Consulting LLC's fees and expenses shall be paid from the Total Settlement Amount. The Settlement Administrator distributed the Class Notice Packets via both U.S. First Class mail; set up a toll-free telephone number for Class Members to call with questions regarding the Settlement; received and processed opt-outs; and will issue settlement checks and handle Settlement-related administrative work. The Settlement Administrator's fees and expenses are projected to be $10,899.00 (Ex. 3, ¶ 12).

### E. Release of Claims

In consideration for their awarded Settlement Shares, all Class Members (other than those Class Members who timely and validly elect not to participate in the Settlement) release the following claims:

> [A]ny and all federal (including without limitation the Fair Labor Standards Act), Indiana state (including without limitation the Indiana Wage Claims, Wage Payment, and Wage

Assignment Statutes), Illinois state (including without limitation the Illinois Wage Payment and Collection Act), any other state, and local law claims, debts, losses, demands, obligations, rights, liabilities, penalties, complaints, and causes of action, including, without limitation, claims for penalties, liquidated damages, compensatory damages, punitive damages, waiting time penalties, restitution, other equitable relief, or attorneys' fees and costs and that arise out of or relate to Defendant's deduction of User Fees from its employees' wages.

(Exh. 1, Settlement Agmt., § II.4.A.)

**F.      Notice to Class Members**

On March 15, 2024, the Settlement Administrator mailed notice of the settlement to all class members via U.S. Mail. [Declaration of Settlement Administrator, ¶ 8]. To date, the Settlement Administrator has been unable to deliver 42 out of 1,134 notices. *Id.* [¶¶ 6, 8, 9]. The Settlement Administrator has received four exclusions and no objections. [*Id.* ¶¶ 10-11], suggesting that 99.65% of Class Members would like the settlement to proceed.

If the Court finally approves the Settlement, then the Class members currently employed by SMC will receive their settlement payments directly from SMC. The Settlement Administrator will mail checks to the remaining Class Members, they will have 90 days to cash those checks, and any uncashed checks will revert to Defendant. Class Members do not have to return a claim form to obtain a settlement payment.

**IV.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

For purposes of Settlement, the Parties agree that the requirements for certification of a settlement class have been met.[1] The Settlement Agreement was negotiated at arm's length, and the terms are favorable to all class members when compared with the potential benefits and risks

---

[1] By the express terms of the Settlement Agreement, the Settlement shall not take effect unless approved by the Court in its current form and until all potential appeal rights have been exhausted.

of further litigation. Therefore, the Parties request that the Court grant final approval of the Settlement.

### A. The Settlement is fair, reasonable, and adequate, and final approval is warranted.

The Settlement was negotiated at arms' length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. See *Burkholder v. City of Ft. Wayne*, 750 F.Supp.2d 990, 995 (N.D. Ind. 2010). For FLSA purposes, the Court must consider "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching. *Id.* The Court should consider the following factors:

> "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation."

*Id.*

Under FED. R. CIV. P. 23(e)(2), the Court may approve a class action settlement if "it is fair, reasonable, and adequate." As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at *6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)). Federal courts naturally favor the settlement of class action litigation.

8

*See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes") (citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citations omitted); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13.1 (5th ed. Supp. 2015) (noting that there is "a 'strong judicial policy in favor of class action settlement'"); *id.* at § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

In the present case, the Settlement Agreement meets the fairness requirements for multiple reasons. First, in the months before prior to attending mediation and entering into the Settlement, the Parties engaged in significant exchange of documents and information, including data pertaining to all Class Members (as opposed to a sample), and engaged in numerous discussions regarding the merits of the claims and defenses. They also briefed class certification and motions for summary judgment. This enabled the Parties to determine the scope of potential damages and to assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (in granting preliminary approval of settlement, noting that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

Class Counsel has achieved an excellent result for the Class Members, particularly in light of the risks and uncertainties associated with continued litigation. SMC has asserted various legal and factual defenses and was partially successful in its motion for summary judgment. If this case

continued, Plaintiffs would risk obtaining no recovery for many of the Class Members – particularly the ones outside Indiana and Illinois.

Further, the different amounts allocated to Class Members are reasonable given the prospect of each group's likelihood of success in further litigation. In Class Counsel's view, the Indiana class members have a high likelihood of recovering the "User Fee" deductions along with prejudgment interest, and so the proposed settlement repays them a higher percentage of the amount deducted from their paychecks. The Illinois class members also had a reasonable likelihood of prevailing on their Illinois Wage Payment & Collection Act claims, and that law imposes penalties of two percent per month on any unlawful deductions. The total exposure to SMC if the Court ruled in Illinois Class Members' favor on the Wage Payment & Collection Act claims was approximately $500,000 in deductions and another $1,000,000 in statutory penalties. The FLSA opt-in members also had substantial claims if the Court determined that the SMC training program was for the benefit of the employer. The Nationwide class members, by contrast, lost all of the claims they brought in this case and have only a speculative recovery if they chose to file their own lawsuit based on another state's laws.

Second, "[c]ourts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of maximum possible recovery and noting courts have approved settlements amounting to 15% and 17% of maximum possible recovery) (citations omitted); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of maximum possible recovery to be reasonable); *In re Newbridge Networks Sec. Litig.*,

No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 28, 1998) (agreement securing between six and twelve percent of potential trial recovery "seems to be within the targeted range of reasonableness").

Third, all involved would benefit from the Settlement, as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Final approval of this Settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendants steadfastly deny liability and the Parties disagree about the merits of the case. *See Chapman*, 2015 WL 9478548, at *7-8.

Finally, adding to the reasonableness of the Settlement, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)). Moreover, no one has objected to the Settlement and only four Class Members has Opted-Out of the Settlement. Accordingly, there has been no opposition to the Settlement, and the reaction of Class Members has been positive.

In sum, the proposed settlement payments provide real monetary relief to over 1,000 class members, repaying them a substantial portion of the User Fees deduction from their paychecks. Absent settlement all class members face substantial delays and uncertain recovery, and, therefore, the Settlement is reasonable for purposes of preliminary approval and providing notice to the class. As such, the Settlement here is fair, reasonable and adequate, and final approval is warranted.

## B. The Proposed Attorneys' Fees Are Reasonable and Warranted

Class Counsel seeks an award of attorneys' fees and litigation costs of not more than $500,000 (approximately 29% of the Total Settlement Amount) (Exh. 1, Settlement Agmt.,

§ II.10.a.) "Under the 'common-fund' doctrine, class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class." *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 115CV02062TWPMPB, 2019 WL 4193376, at *2 (S.D. Ind. Sept. 4, 2019) (citing *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980)). The primary benefit that this Settlement provides to the Class Members is the creation of a gross settlement pool from which the Class Members will receive compensation for the claims raised in the lawsuit. The percentage requested in attorneys' fees is less than one-third (33.33%) of the common fund. One-third is considered reasonable and has routinely been approved by the courts in the Seventh Circuit in complex areas of law. *See id.* at *3. Class Counsel's request of $500,000 in fees and litigation costs is exceedingly reasonable. [See Declaration of Class Counsel Robert J. Hunt, Exhibit 2]

### C. The Service Awards to Lead Plaintiffs are Reasonable and Warranted

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Knox v. Jones Group*, 2017 WL 3834929 *2 (S.D. Ind. Aug. 31, 2017). See also, *Espenscheid v. DirecSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing the importance of incentive awards). "Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Knox*, 2017 WL 3834929 at *2, citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655 *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases). "In examining the reasonableness of the requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the

plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929 at *2, citing *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., 2012 WL 651727 *16 (N.D. Ill. Feb. 28, 2012).

This $1,700,000.00 class and collective action settlement would not have been possible without the named plaintiffs. All participated in gathering information, participating in planning, discovery and, ultimately, making decisions regarding the settlement. The $8,000 service awards agreed to by the Parties and preliminarily approved by the Court are well within the realm of reasonableness of similar service awards within our Circuit. (See *Trevino III, et al. v. Bremen Castings, Inc.,* Case No. 3:18-cv-00271 (N.D. Ind.), approving $15,000 representative payments to plaintiffs from a gross settlement amount of $315,000; *Schneider, et al. v. Union Hospital Inc.*, Case No. 2:15-cv-00204-JMS-DKL (S.D. Ind.) approving $25,000 representative payments to plaintiffs from a gross settlement amount of $2,500,000; and *Bridgewater and Van Ness II, et al. v. Jadcore*, *LLC*, Case No. 2:16-cv-00060-WTL-DLP (S.D. Ind.) approving $10,000.00 representative payments to plaintiffs from a gross settlement amount of $351,296.92)

## V.    Conclusion

For the reasons set forth above, the Parties jointly request that the Court grant Final Approval of the Class and Collective Action Settlement Agreement, which was preliminarily approved on February 21, 2020 (Docket No. 54), grant all requested attorney's fees, costs expenses and named Plaintiffs service awards, and order that class funds be distributed to all participating Class Members.

Dated: April 30, 2024

Respectfully submitted,

*/s/ Robert J. Hunt*
Robert J. Hunt (#30686-49)

Robert F. Hunt (#2598-49)
THE LAW OFFICE OF ROBERT J. HUNT, LLC
1905 South New Market Street, Suite 168
Carmel, Indiana 46032
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
rob@indianawagelaw.com
rfh@indianawagelaw.com

Robert P. Kondras, Jr., Esq.
Hassler Kondras Miller LLP
100 Cherry Street
Terre Haute, IN 47807
kondras@hkmlawfirm.com


Christopher J. Wilmes
Hughes Socol Piers Resnick & Dym
70 W. Madison St. Suite 4000
Chicago, IL 60602
(312) 605-2636


*Counsel for Plaintiffs*